IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COBB COUNTY, GEORGIA, and GWINNETT COUNTY, GEORGIA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 1:15-cv-04373-LMM |
| NETWORK TELEPHONE, LLC, WINDSTREAM COMMUNICATIONS, LLC, WINDSTREAM NUVOX COMMUNICATIONS, LLC, US LEC OF GEORGIA LLC (DELAWARE), LDMI TELECOMMUNICATIONS, LLC TALK AMERICA, LLC F/K/A TALK AMERICA, INC., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

Frank M. Lowrey IV
Ga. Bar No. 410310
Alison B. Prout
Ga. Bar No. 141666
Amanda Seals Bersinger
Ga. Bar No. 502720

**BONDURANT, MIXSON & ELMORE, LLP**
One Atlantic Center, Suite 3900
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

# TABLE OF CONTENTS

TABLE OF CITATIONS ........................................................ iii

INTRODUCTION .................................................................1

BACKGROUND ....................................................................2

    I.    The 911 Act ...............................................................2

    II.    The Counties' Claims ...............................................4

ARGUMENT AND CITATION OF AUTHORITIES............................................6

    I.    Service Suppliers Are Not Liable Under the 911 Act, Which Must Be Narrowly Construed ............................................6

        A. The 911 Act Provides that Subscribers, Not Service Suppliers, Are Liable for the 911 Charge ...................................6

        B. The Counties' Tax Collection Power Must Be Narrowly Construed ...................................................................7

        C. The Counties May Not Invent a Remedy Beyond That Expressly Provided by the Statute ..............................................9

        D. The 911 Act Does Not Provide the Counties the Authority to Recover Unpaid 911 Charges from Defendants ................................................................10

        E. If the Legislature Intended to Give the Counties a Cause of Action Against the Service Suppliers, It Would Have Done So................................................................14

    II.    The Counties Cannot Invoke the General Tort Provisions of Sections 51-1-6 and 51-1-8 (Count III) to Change the Operation of the 911 Act ................................................................15

III.     The Counties' Common Law Claims (Counts IV-VIII) Must Be Dismissed as Impermissible End Runs Around the 911 Act ..............17

IV.     The Counties Have Failed to Adequately Plead Their Common Law Causes of Action (Counts IV-VIII)...............................................18

     A.  The Counties Have Failed to Adequately Allege a Breach of Fiduciary Duty (Count IV) ....................................................18

     B.  The Counties Have Failed to Adequately Plead Fraud and Misrepresentation (Counts V-VII)............................................20

     C.  The Counties Have Failed to Adequately Plead Negligence (Count VIII) ..........................................................22

     D.  The Counties Have Failed to Plead Their Fraud Claims (Counts IV-VI) with the Requisite Particularity.......................23

CONCLUSION .............................................................................................25

CERTIFICATE OF COMPLIANCE........................................................26

CERTIFICATE OF SERVICE ..................................................................27

1416178.1

## TABLE OF CITATIONS

**Cases:**

*Albany Bottling Co. v. Watson,* 103 Ga. 503 (1898) ................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................21

*Bay Area Cellular Tel. Co. v. City of Union City*, 162 Cal. App. 4th 686
    (Cal. App. 2008) ...............................................................................................7

*Best Buy Stores v. Developers Diversified Realty Corp.*, 636 F. Supp. 2d 869
    (D. Minn. 2009) ...............................................................................................19

*Best Jewelry Mfg. Co.* v. *Reed Elsevier Inc.,* 334 Ga. App. 826 (2015) .................12

*Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364 (11th Cir. 1997) ...24,25

*Brown v. Belinfante*, 252 Ga. App. 856 (2001) ......................................................23

*Butts v. S. Clay Inc.*, 215 Ga. App. 110 (1994) ......................................................20

*Camden Tel. & Tel. Co. v. City of St. Marys,* 247 Ga. 687 (1981) ..........................11

*Cellular One, Inc. v. Emanuel County*,  227 Ga. App. 197 (1997) ....................13,14

*Chanin v. Bibb Cnty.,* 234 Ga. 282 (1975) ..............................................................8

*City of Atlanta v. Gower,* 216 Ga. 368 (1960) .....................................................8,11

*City of Atlanta v. Hotels.com*, 289 Ga. 323 (2011) .......................................12,13,14

*City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896 (11th Cir. 2013) ..................13

*Expedia, Inc. v. City of Columbus*, 285 Ga. 684 (2009) ................................12,13,14

*Fountain v. Suber*, 225 Ga. 361 (1969) ...................................................................9

*Fulton County v. T-Mobile South, LLC*, 305 Ga. App. 466 (2010) ..........................7

*Gen. Motors Acceptance Corp.* v. *Miller,* 138 Ga. App. 140 (1976)  ....................18

*Goodwin v. Citizens & S. Nat'l Bank*, 209 Ga. 908 (1953) ...................................8,9

*Govea v. City of Norcross*, 271 Ga. App. 36 (2004) ...............................................11

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) ..................................18

*Hamilton Cnty. Emergency Commc'ns Dist. v. BellSouth Telecomms., LLC*, -
    - F. Supp. 3d --, 2016 WL 70590, at \*13 (E.D. Tenn. Jan. 5, 2016)
    ("*Hamilton Cnty. II*") .................................................................................19,20,21

*Hamilton Cnty. Emergency Commc'ns Dist. v. BellSouth Telecomms., LLC*, 890 F. Supp. 2d 862 (E.D. Tenn. 2012) ("*Hamilton Cnty. I*") .....................22

*In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338 (N.D. Ga. 2010) ........24

*Infrasource, Inc. v. Hahn Yalena Corp.*, 272 Ga. App. 703 (2005) .......................19

*Kessler v. Hevesi*, 45 A.D.3d 474 (N.Y. App. Div. 2007)........................................7

*Kienel v. Lanier*, 190 Ga. App. 201 (1989) ........................................................18,20

*Kirk v. Bray*, 181 Ga. 814 (1935).......................................................................17,18

*Nat'l Weather Srv.—Ga. 911 Charge*, B-301126, 2003 WL 22416497 (Comp. Gen. 2003) ..........................................................................................7

*Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927 (Ala. 2005) ..................................................................................................................23

*Parris v. State Farm Mut. Auto. Ins. Co.*, 229 Ga. App. 522 (1997).................15,16

*Prime Mgmt. Consulting & Inv. Servs. v. Certain Underwriters at Lloyd's London*, 1:07-CV-1578-WSD, 2007 WL 4592099 (N.D. Ga. Dec. 28, 2007) ...........................................................................................................24,25

*Publix- Lucas Theaters, Inc. v. City of Brunswick,* 206 Ga. 206 (1949) ..................9

*Reilly v. Alcan Aluminum Corp.*, 272 Ga. 279, 280 (2000)................................15,16

*ReMax N. Atlanta v. Clark*, 244 Ga. App. 890 (2000) ......................................21,22

*Russ v. Wollheim*, 915 So.2d 1285 (Fla. Dist. Ct. App. 2005) ...............................23

*Southern Ry. Co. v. Moore*, 133 Ga. 806 (1910) ...................................................9,10

*Tracfone Wireless, Inc. v. Comm'n on State Emergency Communs.*, 397 S.W.3d 173 (Tex. 2013) ..................................................................................7

*Trawick Constr. Co. v. Ga. Dep't of Revenue*, 286 Ga. 597 (2010)........................8

*United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015)......................................9

*United States v. Bormes*, 133 S. Ct. 12 (2012) ..................................................9,18

*Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834 (2015)...................................18

*Williams v. Booker*, 310 Ga. App. 209 (2011).......................................................17

**Statutes:**

O.C.G.A. § 23-2-58 .................................................................................19

O.C.G.A. § 46-5-121(a) ..............................................................................2

O.C.G.A. § 46-5-121(d) ............................................................................23

O.C.G.A. § 46-5-122(17) .............................................................................3

O.C.G.A. § 46-5-133(a) ........................................................................... 2-3

O.C.G.A. § 46-5-133(a.1) .......................................................................6,10

O.C.G.A. § 46-5-134(a)(1) ..........................................................................3

O.C.G.A. § 46-5-134(b) ...................................................................4,6,10,21

O.C.G.A. § 46-5-134(b), (d)(1)(i) ...............................................................21

O.C.G.A. § 46-5-134(d)(1) ..........................................................................3

O.C.G.A. § 46-5-134(d)(4) ..................................................................4,19,21

O.C.G.A. § 46-5-134(d)(4)(i) ..................................................................4,19

O.C.G.A. § 48-8-7 ...............................................................................14,15

O.C.G.A. § 48-8-30(b)(1) ..........................................................................14

O.C.G.A. § 48-13-51 .................................................................................12

O.C.G.A. § 48-13-51(a)(1)(B)(ii) ................................................................14

O.C.G.A. § 48-13-58 .................................................................................14

O.C.G.A. § 51-1-6 .............................................................................5,15,16

O.C.G.A. § 51-1-8 .............................................................................5,15,16

**Other:**

Ga. Const., art. VII, § 1, ¶ 1 .....................................................................11

Idaho Op. Atty. Gen. No. 89-4 (Apr. 17, 1989)............................................7

Defendants respectfully move to dismiss the damages claims in the amended complaint under Rule 12(b)(6) for failure to state a claim.[1]

## INTRODUCTION

Defendants are telephone service suppliers.  Plaintiffs Cobb County and Gwinnett County ("the Counties") have filed an amended complaint contending that Defendants allegedly failed to pay charges authorized by the 911 Act.[2]  The Counties' amended complaint must be dismissed because the 911 Act makes only the telephone subscribers (*i.e.*, the end users of the telephone service) liable for 911 charges.  The Act gives the Counties a cause of action against subscribers, not Defendants, for unpaid 911 charges.  And Georgia common law does not permit the Counties to manufacture remedies not contemplated by the statute.

Importantly, the Counties do ***not*** allege that Defendants have failed to remit 911 charges they actually collected, thereby enriching themselves.  Rather, the Counties claim that Defendants should have billed more 911 charges to their

---

[1] On February 16, 2016, this case was consolidated with Civil Action No. 15-cv-0478.  Citations to the amended complaint refer to the operative complaint in the Windstream action, Doc. 16.  The operative complaint in the Network Telephone action, Doc. 5, is substantially the same, though specific paragraph references are not.  This motion seeks the dismissal of the damages claims in both complaints.

[2] The "911 Act" or "Act" refers to the Georgia Emergency Telephone Number 9-1-1 Service Act of 1977, as amended, at O.C.G.A. §§ 46-5-120 *et seq.*

customers, based on the Counties' interpretation of how to count the number of "telephone services" subscribed to by each subscriber. Their entire case rests on the theory that, because Defendants did not bill enough 911 charges to their customers, the Counties are entitled to exact the charges from Defendants themselves, something not authorized by the statute or Georgia law.

Defendants contest the Counties' allegations that they did not correctly bill the 911 charges, but the Court need not reach that issue. The Counties' only authority to collect 911 charges is that which the Georgia legislature expressly gave them, and the legislature did not provide for the enforcement mechanism or the result the Counties seek here. For this reason, and others explained below, the Counties' damages claims (Counts II – VIII) fail as a matter of law.

## BACKGROUND

### I.     The 911 Act

The General Assembly enacted the 911 Act to fund a centralized emergency response service. The Act's stated purpose is "to shorten the time required for a citizen to request and receive emergency aid." O.C.G.A. § 46-5-121(a).

Under the Act, "local governments," like the Counties, are authorized to adopt resolutions imposing a monthly "9-1-1 charge" upon "each telephone service subscribed to by the telephone subscribers" within their jurisdiction. § 46-5-

133(a).  The Act defines "telephone subscriber," in part, as "a person or entity to whom telephone service, either residential or commercial, is provided" – in other words, the end use customer.  § 46-5-122(17).

Each "service supplier"[3] is required to bill the 911 charge monthly to, and collect the 911 charge monthly from, its subscribers.  O.C.G.A. § 46-5-134(a)(1).  Service suppliers may retain three percent of the gross 911 charges collected as an administrative fee for their billing and collection efforts.  § 46-5-134(d)(1).  They must remit the balance of the 911 charges they collect quarterly to the local government for deposit into an "Emergency Telephone System Fund," a separate, restricted revenue fund that the local government must maintain.  *Id.*

The Act explicitly holds the telephone subscriber liable for the 911 charge and provides that the local government has a collection action against the subscriber for unpaid charges:

> Every telephone *subscriber* in the area served by the emergency 9-1-1 system shall be liable for the 9-1-1 charges and the wireless enhanced 9-1-1 charges imposed under this Code section until it has been paid to the service supplier. *A service supplier shall have no obligation to take any legal action to enforce the collection of the 9-1-1 charge or wireless enhanced 9-1-1 charge.* The service supplier shall provide the governing authority within 60 days with the name and address of each *subscriber* who has refused to pay the 9-1-1

---

[3] The Act defines "[s]ervice supplier" as "a person or entity who provides telephone service to a telephone subscriber." O.C.G.A. § 46-5-122(16).

charge or wireless enhanced 9-1-1 charge after such 9-1-1 charge or
wireless enhanced 9-1-1 charge has become due. A collection action
may be initiated by the local government that imposed the charges,
and reasonable costs and attorneys' fees associated with that
collection action may be awarded to the local government collecting
the 9-1-1 charge or wireless enhanced 9-1-1 charge.

O.C.G.A. § 46-5-134(b) (emphasis added). Because § 46-5-134(b) explicitly deals

with the subscriber's liability for 911 charges, the only reasonable interpretation of

the last sentence in this subsection is that the "collection action" referred to in the

last sentence is an action against the subscriber, not the service supplier.

If a local government believes that a service supplier has failed to correctly

bill or collect the 911 charge from the subscriber, the local government "may on an

annual basis, and at its expense, audit or cause to be audited the books and records

for service suppliers with respect to the collection and remittance of 9-1-1

charges."  O.C.G.A. § 46-5-134(d)(4), (i).  If, as a result, the local government

determines that a subscriber has underpaid, it may initiate a collection action

against the subscriber.  § 46-5-134(b).

## II.     The Counties' Claims

Although the Counties assert ten causes of action, they admit that each

"aris[es] out of [Defendants'] failure to properly assess and pay 911 charges to

Plaintiffs as required by Georgia law." Doc. 16 ¶ 1.  So the success of each claim

turns on whether the Counties have the authority to hold Defendants liable for

subscribers' unpaid 911 charges.

In addition to demanding an accounting (Count I) and seeking recovery under the 911 Act (Count II), the Counties assert claims under Georgia statutes generally codifying tort law, O.C.G.A. §§ 51-1-6 and 51-1-8 (Count III). They also assert common law claims derivative of their statutory claims, including breach of fiduciary duty (Count IV), negligence (Count VIII) and fraud-based claims (Counts V, VI & VII).[4]

The Counties seek compensatory damages, which the Counties admit are just the unpaid 911 charges that Defendants allegedly should have collected. Doc. 16 ¶¶ 37–38. Remarkably, the Counties also seek punitive damages, in what is, at best, a statutory interpretation dispute over how to bill pass-through charges. Defendants seeks dismissal of each of the Counties' damages claims—Counts II through VIII.

---

[4] The Counties also seek a declaratory judgment (Count IX) and a permanent injunction (Count X), both derivative of their claim that Defendants are under-billing their subscribers.

1416178.1

## ARGUMENT AND CITATION OF AUTHORITIES

**I.     Service Suppliers Are Not Liable Under the 911 Act, Which Must Be Narrowly Construed.**

**A.    The 911 Act Provides that Subscribers, Not Service Suppliers, Are Liable for the 911 Charge.**

This entire lawsuit is based on the Counties' attempt to hold Defendants liable for charges where the General Assembly already assigned that liability to the subscribers—not the service suppliers.  The 911 Act is clear that the subscriber, and only the subscriber, is liable for unpaid 911 charges: "Any 9-1-1 charges shall be imposed *only on the telephone subscriber* of the entity that provides telephone service directly to the telephone subscriber."  O.C.G.A. § 46-5-133(a.1) (emphasis added); *see also id.* § 46-5-134(b) ("*Every telephone subscriber* in the area served by the emergency 9-1-1 system *shall be liable* for the 9-1-1 charges and the wireless enhanced 9-1-1 charges imposed under this Code section until it has been paid to the service supplier." (emphasis added)).

The statute is equally clear that "[a] service supplier shall have no obligation to take any legal action to enforce the collection of the 9-1-1 charge or wireless enhanced 9-1-1 charge."  *Id.*  In other words, the service supplier is not liable for the tax or for collecting unpaid tax from the subscriber.  Finally, as quoted in full above, the statute provides that the Counties may bring a cause of action *against*

*subscribers* for unpaid charges.  *Id.*  As explained below, the Counties may not sustain an action against Defendants for liability that the General Assembly expressly placed on someone else.

### B.   The Counties' Tax Collection Power Must Be Narrowly Construed.

The statutory analysis of the 911 Act is informed, in part, by the fact that the 911 charge is a "tax."  In *Fulton County v. T-Mobile South, LLC*, 305 Ga. App. 466, 471 & 473 (2010), the Georgia Court of Appeals held that because "the purpose of the charge is to fund, *i.e.*, raise revenue for, the 9-1-1 system, not as compensation for the service rendered by it," the wireless 911 charge "is a tax."[5] The federal Comptroller General likewise concluded that, "[a]lthough the Georgia statute labels it a 911 'charge,' it is clearly a tax imposed by local governments on a class of citizens, namely, those with telephone service."  *Nat'l Weather Srv.—Ga. 911 Charge*, B-301126, 2003 WL 22416497, at *3 (Comp. Gen. 2003).  Numerous courts have found similar 911 charges to be taxes.[6]

Under Georgia law, counties and municipalities cannot exact, levy, or collect

---

[5] There is no analytical or legal difference between the wireless 911 charge at issue in *T-Mobile* and the wireline 911 charge at issue here.

[6] *See, e.g.*, *Tracfone Wireless, Inc. v. Comm'n on State Emergency Communs.*, 397 S.W.3d 173, 175 n.3 (Tex. 2013); *Bay Area Cellular Tel. Co. v. City of Union City*, 162 Cal. App. 4th 686, 699 (Cal. App. 2008); *Kessler v. Hevesi*, 45 A.D.3d 474, 475 (N.Y. App. Div. 2007); Idaho Op. Atty. Gen. No. 89-4 (Apr. 17, 1989).

1416178.1

taxes in a manner not clearly provided for in the statute. *Albany Bottling Co. v. Watson,* 103 Ga. 503, 505 (1898). "Because the taxing power of counties is severely limited, unless the county has clear authority for a given exaction it must fall." *Chanin v. Bibb Cnty.,* 234 Ga. 282, 285–86 (1975).

Moreover, because the 911 charge is a tax, the statute authorizing its collection must be strictly construed against the government. Courts "must construe all doubtful cases against the power to tax and in favor of the taxpayer," and "[i]f there is any doubt as to the power of the county to tax in a particular instance, it must be resolved in the negative." *Chanin,* 234 Ga. at 286; *see also Trawick Constr. Co. v. Ga. Dep't of Revenue*, 286 Ga. 597, 598 (2010) ("when a taxing statute has doubtful meaning, it must be construed liberally in favor of the taxpayer and against the State").

In addition, the Counties have the burden to prove their authority to exact the 911 tax from service suppliers. "[T]he burden is upon every political subdivision of the State which demands taxes from the people to show authority to exercise it in the manner in which it has been imposed by a valid law of this State." *City of Atlanta v. Gower,* 216 Ga. 368, 370 (1960); *accord Albany Bottling Co*, 103 Ga. at 505. In the case of statutory ambiguity or close calls, "all ambiguous or loose tax laws must be construed against the government." *Goodwin v. Citizens &*

*S. Nat'l Bank*, 209 Ga. 908, 912 (1953).  Significantly, "[t]his rule forbids any construction by implication," *id.*, meaning that a county may bring an action to collect a tax only as the statute expressly authorizes.

### C.   The Counties May Not Invent a Remedy Beyond That Expressly Provided by the Statute.

Even if this were not a tax, ordinary rules of statutory construction bar the Counties' attempt to hold service suppliers liable for subscribers' debts.  Where, as here, a statute creates a new right and express remedy, that remedy is exclusive. *Southern Ry. Co. v. Moore*, 133 Ga. 806, 809 (1910) ("when the statute gives a right or remedy which did not exist at common law, and provides a specific method of enforcing it, the mode of procedure provided by the statute is exclusive and must be pursued strictly"); *Fountain v. Suber*, 225 Ga. 361, 364–65 (1969) (same); *United States v. Bormes*, 133 S. Ct. 12, 18 (2012) ("Where the 'liability is one created by statute,' the 'special remedy provided by the same statute is exclusive.'").

That the Counties, or even a court, may believe that a statute should operate another way is not relevant.  "The role of this Court is to apply the statute as it is written—even if we think some other approach might accor[d] with good policy." *United States v. Alabama*, 778 F.3d 926, 941 (11th Cir. 2015); *see also Publix-Lucas Theaters, Inc. v. City of Brunswick,* 206 Ga. 206, 210 (1949) (a revenue statute's provisions "are not to be extended, by implication, beyond the clear

1416178.1

9

import of the language used").  Indeed, for a federal court to import a remedy into a state statute that the state legislature did not create violates both the separation of powers between the legislature and judiciary and the constraints of federalism between the federal and state court systems.

These rules of construction are easy to apply to the 911 Act, which provides that the "9-1-1 charges shall be imposed only on the telephone subscriber," O.C.G.A. § 46-5-133(a.1), and that "[a] collection action may be initiated by the local government" against the subscriber for any unpaid charges.  § 46-5-134(b). Whether the 911 charge is a tax or not, the Act plainly creates a new statutory obligation for the subscriber and a new remedy for the local government.  The legislature clearly considered what remedies counties should have; indeed, it created an express right of action against the subscriber.  The legislature could have given counties a cause of action against the suppliers, but it did not.  Under Georgia law, the remedy provided by the Act and imposed on the subscriber "is exclusive and must be pursued strictly."  *Southern Ry.*, 133 Ga. at 809.

### D.   The 911 Act Does Not Provide the Counties the Authority to Recover Unpaid 911 Charges from Defendants.

Just as the Act does not make suppliers liable for the 911 charge, it likewise does not give the Counties a cause of action against the suppliers.  "That omission is significant because the General Assembly was not silent on the means of

enforcing [the] statute[].” *Govea v. City of Norcross*, 271 Ga. App. 36, 41–42 (2004) (declining to find a statutory remedy where “[t]he General Assembly could have created a cause of action in favor of private individuals injured for a unit’s noncompliance with the POST Act reporting requirements,” but did not).  It expressly provided for enforcement against the subscriber instead.

The absence of a private right of action by the Counties to recover underpaid 911 charges from service suppliers is particularly significant because the power to collect taxes originates with the General Assembly—not the counties.[7]  And it remains there, absent explicit delegation.  “For a municipality to possess this [taxing] power it must be conferred upon the municipality either directly in the constitution or by statute” in “plain and unmistakable terms.”  *Camden Tel. & Tel. Co. v. City of St. Marys,* 247 Ga. 687, 689 (1981); *accord Gower,* 216 Ga. at 370 (“Municipal corporations can levy no tax ... unless the power to do so be plainly and unmistakably granted by the state”).  Nothing in this statute even impliedly authorizes a county to sue a telephone service supplier for 911 charges, let alone “plainly and unmistakably.”  *Id.*

---

[7] Ga. Const., art. VII, § 1, ¶ 1 (“Except as otherwise provided in this Constitution, the right of taxation shall always be under the complete control of the state.”); *id.* at ¶ 3(a) (“All taxes shall be levied and collected under general laws and for public purposes only.”).

Perhaps the Counties will say that this leaves them without a damages remedy against an allegedly under-billing service supplier.  But "it is well settled that violating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof." *Best Jewelry Mfg. Co.* v. *Reed Elsevier Inc.,* 334 Ga. App. 826, 833 (2015).

In particular, Georgia courts do not permit parties to fill alleged enforcement gaps in revenue statutes, as the Counties advocate doing here.  For example, in a series of cases, the Georgia Supreme Court refused to find that a local government has implied authority to bring a cause of action against a tax collecting entity— even when that entity actually has already collected the tax in question—where the enabling statute fails to provide an express cause of action.  *See City of Atlanta v. Hotels.com*, 289 Ga. 323, 328 (2011); *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 691 (2009).

Under the hotel occupancy tax statute, "hotel operators" are required to levy and assess a tax on hotel guests.  O.C.G.A. § 48-13-51.  In *City of Atlanta v. Hotels.com*, the Georgia Supreme Court rejected the city's attempt to recover back taxes against a tax-collecting online travel company because the statute expressly provided for collection rights and remedies only against "hotel operators," and the online travel companies were not "hotel operators."  The city had no claim against

the online travel companies—even though they collected the tax from the hotel guests as intermediaries.  289 Ga. at 328.  The Court was not moved by the city's argument that it would be left with no "remedy for back taxes." *Id*.  Similarly, in *Expedia, Inc. v. City of Columbus*,  the Court held that a city had no damages claim against Expedia for back taxes under occupancy tax statute, even though Expedia collected those taxes when facilitating hotel reservations, because "the Enabling Statute . . . do[es] not contemplate or provide for an enforcement action against a third-party tax collector such as Expedia."  285 Ga. at 691.[8]

Similarly, in *Cellular One, Inc. v. Emanuel County*, a county filed a tax collection action against telecommunications company "dealers," alleging that they were not properly remitting the local option sales tax.  227 Ga. App. 197 (1997).  Because the statute authorized only the *commissioner* to collect the tax, however, the court concluded that "the legislature did not intend for *counties* to have an independent right of action against dealers." *Id.* at 200 (emphasis added).  "It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Id.*

---

[8] The Eleventh Circuit likewise rejected comparable efforts by Georgia municipalities to recover hotel taxes from entities other than hotels, limiting the cities and counties to the enforcement mechanisms explicitly created by statute. *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896 (11th Cir. 2013).

Even though the counties were the designated recipients of the tax and the plaintiff county "has been injured by its receipt of reduced tax revenues," *id.* at 198, it did not have a cause of action against the dealers because the statute provided a different enforcement scheme, and the court was "compelled to conclude that the legislature provided precisely the remedies it considered appropriate." *Id.* at 200.

Like the hotel occupancy tax and local option sales tax schemes, the 911 Act does not provide the Counties the cause of action they would manufacture here. And, like the courts in *Hotels.com*, *Expedia* and *Cellular One*, this Court should refuse to fill any alleged gaps in the 911 Act by inferring a remedy not expressly found in that statute.

### E.   If the Legislature Intended to Give the Counties a Cause of Action Against the Service Suppliers, It Would Have Done So.

When the General Assembly intends to create liability for a tax-collecting entity, it knows how to do so.  For example, the hotel occupancy tax statute expressly provides that "hotel operators" are liable for paying the tax whether or not they collect it from guests.  O.C.G.A. 48-13-51(a)(1)(B)(ii) & 48-13-58. Similarly, the statutes authorizing local option sales taxes provide that "dealers" are required to collect taxes from consumers to whom they sell goods, and then to remit the tax to the commissioner.  §§ 48-8-7, 48-8-30(b)(1).  A dealer who "knowingly and willfully" fails to collect the tax is "liable for and [shall] pay[] the

tax himself." § 48-8-7(a) & (b).  Ironically, the Counties' invented remedy under the 911 Act would impose a stricter liability standard against service providers than the express remedy in the local option sales tax statute, which reaches only *knowing* and *willful* under-collection by intermediaries, rather than imposing strict liability for disagreements about interpretation.  Given that the General Assembly understands how to create express liability for tax collecting entities, it is illogical to assume from silence that it intended that result here.

## II.     The Counties Cannot Invoke the General Tort Provisions of Sections 51-1-6 and 51-1-8 (Count III) to Change the Operation of the 911 Act.

The Counties cannot use the general tort provisions of O.C.G.A. §§ 51-1-6 and 51-1-8 to conjure a cause of action against Defendants from the otherwise silent 911 Act.  Sections 51-1-6 and 51-1-8 do "not confer a separate cause of action in tort upon one who has suffered a breach of a legal or a private duty." *Parris v. State Farm Mut. Auto. Ins. Co.*, 229 Ga. App. 522, 524 (1997).  Instead, those statutes "merely set forth general principles of tort law."  *Reilly v. Alcan Aluminum Corp.*, 272 Ga. 279, 280 (2000).  The Georgia Courts have not allowed plaintiffs to use these statutes to inject additional remedies into complex regulatory or revenue collection schemes, as the Counties propose to do here.

In *Parris*, the Georgia Court of Appeals confronted an argument similar to

that made by the Counties—that §§ 51-1-6 and 51-1-8 could support a damages action for breach of an insurer's coverage disclosure obligations under the insurance code, even though the code provided no express causes of action. 229 Ga. App. at 524. Noting that the legislature could have—but did not—create such a cause of action as part of the insurance code, the Court concluded that silence demonstrated the legislature's intent that no such cause of action exist. *Id.*

Likewise, in *Reilly*, the Georgia Supreme Court rejected a plaintiff's attempt to read the general tort provisions as creating a private right of action for age discrimination in employment because doing so would contravene legislative intent and effectively amend the age discrimination statute. 272 Ga. at 280.

Consistent with *Reilly* and *Parris*, §§ 51-1-6 and 51-1-8 create no independent rights or duties and cannot alter the remedies available under other, more specific statutes. If the general tort provisions injected additional remedies into taxing schemes, for example, then the Georgia courts would have decided the hotel tax and local options sales tax cases discussed above differently, by allowing the revenue-deprived municipalities to recover. Just as the Georgia courts have refused to amend specific statutes by application of the general tort provisions to infer new remedies, so must this Court refuse to amend the Act by misapplying those provisions here.

1416178.1

16

### III.     The Counties' Common Law Claims (Counts IV-VIII) Must Be Dismissed as Impermissible End Runs Around the 911 Act.

The Counties attempt to recast their statutory claims into common law tort claims by alleging that Defendants had a "common law duty to bill, collect, report, and remit to Plaintiffs the 911 charges."  Doc. 16 ¶ 96.  But the 911 fee is purely a creature of recent statute; there is no common law duty to bill, collect, report or remit such charges.  "It is axiomatic that an essential element of a tort claim is the existence of a duty owed by the defendant to the purported plaintiff."  *Williams v. Booker*, 310 Ga. App. 209, 213 (2011) (quotation omitted).  The Counties fail to identify the nature or source of any common law duty because none exists.

Moreover, just as the express statutory remedy against subscribers under the Act prohibits the Counties from manufacturing an alternative statutory remedy against providers, it preempts the Counties from manufacturing a common law remedy altogether.  "[W]here a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally conclusive of all common-law remedies."  *Kirk v. Bray*, 181 Ga. 814, 817 (1935).

Accordingly, if a statute does not contain a right of action in favor of a party, that party may not seek to enforce the statute via the common law.  In particular, "when the statute undertakes to provide remedies for the collection of taxes, and those given do not embrace an action at law, a common-law action for the recovery

of taxes as a debt will not lie." *Id.* at 818; *see also Bormes*, 133 S. Ct. at 18 (a "precisely drawn, detailed statute pre-empts more general remedies"); *Gen. Motors Acceptance Corp.* v. *Miller,* 138 Ga. App. 140, 145 (1976) ("Ordinarily where a remedy is statutory it affords no remedy except such as the statute provides.").

The Counties may not obtain through the back door what the legislature did not allow through the front. "Since in this case, … no private right of action exists under the relevant statute, the plaintiffs' efforts to bring their claims as state common-law claims are clearly an impermissible end run around the [statute]." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).

### IV.    The Counties Have Failed to Adequately Plead Their Common Law Causes of Action (Counts IV-VIII).

Even if the 911 Act did not proscribe the Counties' common law claims, each suffers fatal pleading defects requiring dismissal.

### A.    The Counties Have Failed to Adequately Allege a Breach of Fiduciary Duty (Count IV).

Paramount to any fiduciary duty claim is the existence of such a duty. *Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834, 842 (2015). A confidential relationship—synonymous with a fiduciary relationship under Georgia law, *Kienel v. Lanier*, 190 Ga. App. 201, 203 (1989)—exists where one party exercises "controlling influence over the will, conduct, and interest of another, or where,

from a similar relationship of mutual confidence, the law requires the utmost good faith."  O.C.G.A. § 23-2-58.

The complaint pleads no facts or legal authority creating such a relationship. Far from creating a relationship of "mutual confidence," the Act gives the Counties the express right to audit service suppliers' collections and remittances of the 911 charges.  § 46-5-134(d)(4) & (i).  Such audit power undermines the existence of any relationship of trust or controlling influence.  *See, e.g.*, *Best Buy Stores v. Developers Diversified Realty Corp.*, 636 F. Supp. 2d 869, 889 (D. Minn. 2009), *rev'd in part on other grounds* 668 F.3d 1019 (8th Cir. 2012) (no fiduciary duty found where "audit provisions indicate that [plaintiff] did not simply repose confidence in defendants that resulted in defendants' superiority and influence"). "[A]n arm's-length relationship by its nature excludes a confidential relationship." *Infrasource, Inc. v. Hahn Yalena Corp.*, 272 Ga. App. 703, 705 (2005).

Another federal district court rejected a similar fiduciary duty claim made by local governments under Tennessee's 911 statute.  *Hamilton Cnty. Emergency Commc'ns Dist. v. BellSouth Telecomms., LLC*, -- F. Supp. 3d --, 2016 WL 70590, at *13 (E.D. Tenn. Jan. 5, 2016) (hereinafter, "*Hamilton Cnty. II*").  Like the Georgia law, "[t]he [Tennessee] 911 Law requires service suppliers to bill 911 charges to subscribers and remit them to the [local governments]. Under the law,

this is an obligation to the public, and there is nothing in the law providing for either party's control over the other."  *Id.* at *15.

Outside of the Act, there is no basis for a confidential relationship between the Counties and Defendants—or indeed any relationship at all—to support the Counties' claims.  As the *Hamilton County II* court observed, "[f]inancial dependence combined with superior access to information is not sufficient to show a confidential relationship."  *Id.*  Otherwise, virtually every contract would create a confidential relationship due to asymmetry of information between the parties. The Counties' alleged repose of trust and confidence in the Defendants is insufficient to make the relationship between them confidential.  *Kienel*, 190 Ga. App. at 203; *Butts v. S. Clay Inc.*, 215 Ga. App. 110, 112 (1994) (seller's knowledge of mineral reserves on buyer's property neither created a confidential relationship between them nor required seller to disclose such knowledge to buyer, absent agreement to do so).

### B.   The Counties Have Failed to Adequately Plead Fraud and Misrepresentation (Counts V-VII).

The Counties' claims of fraudulent misrepresentation and concealment and negligent misrepresentation (Counts V-VII) should be dismissed for four reasons.

First, neither common nor statutory law creates a duty to disclose information regarding charges the suppliers have *not* billed or collected.  Common

law creates no duties of any sort regarding 911 charges, and the 911 Act does not provide that suppliers must report the number of channels capable of reaching the Counties' dispatch centers, only the amounts collected and remitted.  O.C.G.A. § 46-5-134(b), (d)(1) & (i); *accord Hamilton Cnty. II*, 2016 WL 70590, at *23 (finding that Tennessee's equivalent statute did not require suppliers "to affirmatively and pro-actively disclose what types of lines [they] had *not* billed").

Second, the Counties have not alleged that the representations Defendants *did* make were false or that Defendants omitted any material information they were actually obligated to disclose.  The Counties have not alleged that Defendants have misrepresented the amounts collected and remitted.  And, as explained above, the Act does not require suppliers to report channels capable of reaching the Counties' dispatch centers, only the amounts collected and remitted.

Third, the Counties have not alleged facts plausibly showing justified reliance, an essential element of fraudulent misrepresentation and concealment as well as negligent misrepresentation.  *ReMax N. Atlanta v. Clark*, 244 Ga. App. 890, 893 (2000).  They have merely recited the element, Doc. 16 ¶¶ 76, 86, 93, which is insufficient even under Rule 8 (let alone Rule 9(b), as addressed below).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, the Counties' audit right, O.C.G.A. § 46-5-134(d)(4), presupposes that they will *not* rely exclusively on the

1416178.1

21

suppliers' representations.

Fourth, even if reliance were justified, the Counties' misrepresentation claims suffer from a fatal causation problem.  To state a claim for misrepresentation or concealment, the injury must flow from the plaintiff's justified reliance.  *ReMax*, 244 Ga. App. at 893.  The Counties' injury, however, flows not from action or inaction premised on reliance, but from alleged underbilling.  Accordingly, their misrepresentation and concealment claims all fail, and Counts V, VI, and VII must be dismissed.

## C.   The Counties Have Failed to Adequately Plead Negligence (Count VIII).

Just as the Counties' other common law claims fail on their elements, so do their claims of negligence and negligence *per se*.  As shown above, neither statute nor common law creates a duty on the part of suppliers—as required for a negligence claim—to remit charges not collected to the Counties.  *Hamilton Cnty. Emergency Commc'ns Dist. v. BellSouth Telecomms., LLC*, 890 F. Supp. 2d 862, 881 (E.D. Tenn. 2012) ("*Hamilton Cnty. I*") (dismissing negligence claims premised on violation of Tennessee's equivalent to the Act because there is no common law duty of care "to bill, collect, report, and remit" 911 charges).

The Counties' attempt to assert negligence claims is nothing more than an attempt to read a new common law cause of action into a revenue collection

statute, which the Georgia courts do not permit.  Moreover, for a violation of a statute to be negligence *per se* as to a particular plaintiff, (1) the plaintiff must "fall[] within the class of persons [the statute] was intended to protect," and (2) the plaintiff's harm must be the harm the statute "was intended to guard against." *Brown v. Belinfante*, 252 Ga. App. 856, 861 (2001).  The Counties' claims satisfy neither of those requirements.  The Act exists to protect members of the public. O.C.G.A. § 46-5-121(d) (911 Act enacted for "the safety and well-being of the citizens of Georgia"); *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) (for purposes of negligence *per se*, a "class of persons is to be distinguished from the general public"); *accord Russ v. Wollheim*, 915 So. 2d 1285, 1286 (Fla. Dist. Ct. App. 2005).  Its purpose is not to enable local governments to collect taxes they allege were not properly remitted.  Count VIII must be dismissed.

**D.   The Counties Have Failed to Plead Their Fraud Claims (Counts IV-VI) with the Requisite Particularity.**

Even if the Counties' claims met the Rule 8 pleading standard, their claims sounding in fraud fail the particularity requirement of Rule 9(b).  The Counties' claims of breach of fiduciary duty (Count IV), like their claims of fraudulent misrepresentation (Count V) and fraudulent concealment (Count VI), must meet Rule 9(b)'s particularity requirement because they sound in fraud; they allege that

1416178.1

23

Defendants either did not disclose material information they had a duty to disclose or knowingly provided misleading information.  Doc. 16 ¶ 66; *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1349 (N.D. Ga. 2010) (breach of fiduciary duty claims sounding in fraud must be pleaded with particularity).

> To satisfy Rule 9(b), the Counties needed to allege:
>
> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

The Counties have not satisfied these requirements.  Instead, they allege generally that "Windstream" submitted quarterly reports that were somehow inaccurate because it "knew it supplied more voice lines capable of providing a pathway to Plaintiffs' 911 services than it represented in the statements."  Doc. 16 ¶ 75.  Simply alleging that a series of unidentified reports about unidentified voice lines generally included unidentified statements underreporting charges by an unidentified amount does not meet the pleading standard because it leaves Defendants unable to identify (and therefore verify) any particular statement or line item in any particular quarterly report.  *See Prime Mgmt. Consulting & Inv. Servs. v. Certain Underwriters at Lloyd's London*, 1:07-CV-1578-WSD, 2007 WL

1416178.1

24

4592099, at *6 (N.D. Ga. Dec. 28, 2007) ("Pleadings are insufficient where they simply lump together all defendants and are 'devoid of specific allegations with respect to the separate Defendants.'") (citing *Brooks*, 116 F.3d at 1371).  Nor have they alleged with particularity the facts that give rise to any fiduciary duty or other duty to disclose.

## CONCLUSION

For the foregoing reason, the Counties' Counts II-VIII should be dismissed.

Respectfully submitted, this 14th day of March, 2016.

/s/ Alison B. Prout
Frank M. Lowrey IV
Georgia Bar No. 410310
lowrey@bmelaw.com
Alison B. Prout
Georgia Bar No. 141666
prout@bmelaw.com
Amanda Seals Bersinger
Ga. Bar No. 502720
bersinger@bmelaw.com

*Attorneys for Defendants Windstream*
*Communications, LLC,*
*Windstream NuVox, LLC,*
*US LEC of Georgia LLC,*
*LDMI Telecommunications, LLC,*
*Talk America, LLC, and*
*Network Telephone, LLC*

1416178.1

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1(C).  This document was prepared in Times New Roman 14 point font.

This 14th day of March, 2016.

/s/ Alison B. Prout
Alison B. Prout

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **RESPONSE TO MOTION FOR CONSOLIDATION** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically serve notification of such filing to all counsel of record as follows:

> Jeffrey R. Harris, Esq.
> jeff@hpllegal.com
> Darren W. Penn, Esq.
> darren@hpllegal.com
> David J. Worley, Esq.
> david@hpllegal.com
> James M. Evangelista, Esq.
> jim@hpllegal.com
> Harris Penn Lowry, LLP
> 1201 Peachtree Street, N.E.
> 400 Colony Square, Suite 900
> Atlanta, Georgia  30361
>
> Roy E. Barnes, Esq.
> roy@barneslawgroup.com
> John R. Bevis, Esq.
> bevis@barneslawgroup.com
> W. Matthew Wilson, Esq.
> mwilson@barneslawgroup.com
> The Barnes Law Group, LLC
> 31 Atlanta Street
> Marietta, Georgia  30060

This 14th day of March, 2016.

/s/ Alison B. Prout
Alison B. Prout

1416178.1

27